UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON

**TOMMY RANDALL THOMPSON,**

       **Plaintiff,**

**v.**                                           **CIVIL ACTION 3:15-cv-8259**

**CAROLYN W. COLVIN,**
**Acting Commissioner of Social Security,**

       **Defendant.**

## **PROPOSED FINDINGS AND RECOMMENDATION**

Pending before this Court is Plaintiff's Brief in Support of Motion for Judgment on the Pleadings (ECF No. 8) and the Brief in Support of Defendant's Decision (ECF No. 11).

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. This case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).

Background

Tommy Randall Thompson, Claimant, protectively applied for disability insurance benefits (DIB) under Title II of the Social Security Act on January 11, 2012, alleging disability beginning on August 11, 2011. The claim was denied initially on June 13, 2012, and upon reconsideration on October 3, 2012. Claimant filed a written request for hearing on November 30, 2012. On February 13, 2014, Claimant appeared and testified at a hearing in Huntington, West Virginia, before an Administrative Law Judge (ALJ). In the Decision dated March 14, 2014, the

1

ALJ determined that the Claimant was not disabled under sections 216(i) and 223(d) of the Social Security Act. On approximately April 30, 2014, Claimant filed a request for review of the hearing decision by the Appeals Council (AC) (Tr. at 5). On May 7, 2015, the Appeals Council denied Claimant's request for review of the ALJ's decision (Tr. at 1-4). The Appeals Council (AC) stated that "we considered the reasons you disagree with the decision. We found that this information does not provide a basis for changing the Administrative Law Judge's decision" (Tr. at 2). Subsequently, Claimant brought the present action requesting this Court review the decision of the Defendant and that upon review, it reverse, grant Claimant's application for DIB, or, in the alternative, remand this matter (ECF No. 8).

## Standard of Review

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (2015). If an individual is found "not disabled" at any step, further inquiry is unnecessary. *Id.* § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id.* § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. *Id.* § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* § 404.1520(d). If it does, the claimant is found disabled and awarded

benefits. *Id.* If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 404.1520(e). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall v. Harris,* 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (2015). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date of January 14, 2008, and meets the insured status requirements of the Social Security Act through December 31, 2013 (Tr. at 12). Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of osteoarthrosis and allied disorders; gastritis and duodenitis; essential tremors; and affective mood and anxiety related disorders to include Major Depressive Disorder (with anxious features) (Tr. at 13). At the third inquiry, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled the level of severity of any listing in Appendix 1 (Tr. at 15). The ALJ then found that Claimant has a residual functional capacity to perform unskilled work at the medium exertional level, however, Claimant's ability to perform all or substantially all of the requirements of this level of work is impeded by additional limitations (Tr. at 20). The ALJ found that Claimant is further limited to lifting/carrying of no

more than 50 pounds maximum occasionally and 25 pounds maximum frequently. He may frequently climb ramps/stairs, balance, stoop, kneel, crouch and crawl. He should never climb ladders, ropes or scaffolds. He should avoid concentrated exposure to pulmonary irritants and should never be exposed to vibration or hazards. He may interact with supervisors, colleagues and the public but on no more than an occasional basis. (*Id.*) The ALJ concluded that Claimant could not perform past relevant work (Tr. at 26). The ALJ concluded that considering Claimant's age, education, work experience and residential functional capacity, there are jobs that exist in significant numbers in the national economy that Claimant can perform. On this basis, benefits were denied (Tr. at 28).

## Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as:

> Evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner in this case is not

supported by substantial evidence.

### Claimant's Background

Claimant was born on September 11, 1953. He graduated from high school. Claimant can read and write (Tr. at 43). He lives with his wife (Tr. at 45).

### Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the ALJ failed to develop medical evidence regarding Claimant's lumbar pain, cervical pain, hypertension, ear pain, hearing loss, depression, obesity and erectile dysfunction (ECF No. 8). Claimant argues that the ALJ failed to consider and properly evaluate his claim under the combination of impairments theory. (*Id.*) Defendant avers that Claimant "bore the burden of producing evidence of his disability and the ALJ was under no further duty to develop the record" (ECF No. 11). Additionally, Defendant asserts that substantial evidence supports the ALJ's assessment of Claimant's impairments.

### Medical Record

The Court adopts the medical record findings asserted by Claimant and by Defendant to the extent as follows (ECF Nos. 8 & 11):

On March 23, 2011, Claimant went to Cabell Huntington Hospital Surgery Center to undergo a colonoscopy for a colon cancer screening (Tr. at 387). After the procedure, Claimant was diagnosed with sigmoid diverticula disease. (*Id.*) Claimant saw Douglas Henson, M.D., for follow-up of his colonoscopy on March 31, 2011. Dr. Henson discovered an umbilical hernia and scheduled a hernia repair, which Claimant underwent on April 13, 2011 (Tr. at 368, 373). On May 2, 2011, he presented to Scott Gibbs, M.D., at Touma Ear, Hearing, and Balance Center for follow up on the CT scan of his chest, abdomen, and pelvis which showed a 3.5 cm nodule in the left lower thyroid gland as well as a small nodule in the right upper lobe in his

lung (Tr. at 266). Upon examination, Dr. Gibbs diagnosed Claimant with thyroid nodule disease and recommended that he undergo a fine needle aspiration. (*Id.*) On May 13, 2011, Claimant underwent the fine needle aspiration at Cabell Huntington Hospital (Tr. at 323). The operation was successful. (*Id.*)

On May 10, 2011, Claimant was evaluated by Douglas Henson, M.D., at University Physicians and Surgeons following the CT scan of abdomen which shows the 3.5 cm mass on his right thyroid and the 5 mm right lung nodule (Tr. at 368). Claimant returned to University Physicians and Surgeons on October 12, 2011, with complaints of abdominal pain described as sharp pain which lasts for 1-2 hours. (*Id.*). Upon examination, Claimant was diagnosed with abdominal pain and was ordered to undergo a gastric and esophageal biopsy, which he did the next day (Tr. at 367).

On May 31, 2011, Claimant presented for a follow up visit to Dr. Gibbs after he underwent the fine needle aspiration (Tr. at 264). Dr. Gibbs noted that Claimant will likely have to undergo surgery if the nodule enlarges. (*Id.*) On August 12, 2011, Claimant presented to Gary Cremeans II, M.D., his primary care physician at Cabell Huntington Hospital Family Clinic, with complaints of abdominal pain, fatigue, anxiety, and depression (Tr. at 312). Dr. Cremeans noted that Claimant, despite having hernia surgery, was still having abdominal pain. (*Id.*) Dr. Cremeans referred Claimant to a gastroenterologist for his abdominal pain and advised him to continue his Celexa and Xanax for his anxiety and depression. (*Id.*) Claimant made additional visits to Dr. Cremeans on September 13, 2011, December 13, 2011, and February 14, 2012 (Tr. at 309-311).

On October 20, 2011, Claimant returned to University Physicians and Surgeons to

undergo an upper GI endoscopy (Tr. at 357-358). Claimant was treated by Yaser Rayyan, M.D., on his next visit on November 3, 2011 (Tr. at 355). Dr. Rayyan ordered more testing, including a CT scan of the abdomen that Claimant underwent on November 15, 2011 (Tr. at 353). On December 13, 2011, Dr. Cremeans noted that Claimant was experiencing a tremor in his head as well as in his hands for the past few months (Tr. at 310). Dr. Cremeans referred Claimant to a neurologist. (*Id.*)

On January 3, 2012, Claimant returned to Dr. Gibbs (Tr. at 261). Due to central necrosis, as well as the large size of the thyroid nodule, Claimant elected to undergo surgery. (*Id.*) The surgery was later canceled due to Claimant's loss of health insurance after he could no longer work (Tr. at 260).

Claimant next returned to Dr. Rayyan for his abdominal pain on February 13, 2012 (Tr. at 343). On April 3, 2012, Claimant had a follow up visit with Paul Ferguson, M.D., for his complaints of tremors in his hands, neck, and head (Tr. at 340). Claimant reported drinking more than 12 cups of caffeinated beverages daily. (*Id.*) Dr. Ferguson diagnosed Claimant with an essential tremor (Tr. at 342). Dr. Ferguson increased Claimant's beta-blocker and instructed him to decrease his caffeine consumption to a maxiumum of two cups daily. Claimant presented back to Dr. Ferguson on May 29, 2012, with complaints of the tremors as well as abdominal pain (Tr. at 378). He was again diagnosed with essential tremors (Tr. at 379). Dr. Ferguson increased Claimant's beta-blocker and instructed him to keep his caffeine consumption to a minimum.

On April 30, 2012, Rabah Boukhemis, M.D., a state agency physician, reviewed Plaintiff's medical records and assessed that he could lift, carry, push, or pull 50 pounds occasionally and 20 pounds frequently; and sit, stand, or walk about six hours out of an eight-hour day (Tr. at 88-89).

Dr. Boukhemis further assessed that Plaintiff could only occasionally crawl and climb ladders, ropes, or scaffolds, but could frequently climb ramps or stairs, balance, stoop, kneel, and crouch (Tr. at 89). Dr. Boukhemis also assessed that Plaintiff had no manipulative, visual, or communicative limitations, but he should avoid concentrated exposure to vibration, respiratory irritants, and hazards (Tr. at 89-90). On August 14, 2012, Rogelio Lim, M.D., a second state agency physician, reviewed Plaintiff's records and agreed with Dr. Boukhemis' assessment (Tr. at 101-102).

On May 30, 2012, Claimant underwent a mental status examination which was performed by Lisa Tate, M.A. (Tr. at 381). Ms. Tate noted that Claimant's mood was depressed; his recent memory was mildly deficient; his concentration was mildly deficient; and that he suffered from fatigue, loss of interest in activities, social withdrawal, problems with attention and concentration, varied appetite, excessive worry, and feelings of hopelessness (Tr. at 383-384). Ms. Tate assessed Claimant with major depressive disorder with anxious features. On August 14, 2012, Claimant returned to Dr. Cremeans where he complained of anxiety, depression, GERD, and a tremor (Tr. at 406). Upon examination, he was diagnosed with anxiety, depression, tremors, GERD, and hyperlipidemia. (*Id.*)

Claimant had a follow up visit for his tremors with Dr. Ferguson on November 27, 2012 (Tr. at 400). Dr. Ferguson noted that Claimant's symptoms had been occurring for approximately a year and were getting progressively worse (*Id.*). Claimant's beta-blocker was not helping his tremors, so Dr. Ferguson discontinued the medication and ordered that Claimant do a titration dosing strategy (Tr. at 401). During his next visit on December 27, 2012, Claimant stated that he had minimal improvement since the last visit (Tr. at 397). Claimant also stated that he was having difficulty sleeping. (*Id.*) He had an additional follow up visit with Dr. Ferguson on January 30,

2013, with no relief in his symptoms (Tr. at 395).

Claimant's next visit to University Physicians and Surgeons was to see Jennifer Fields, APRN on March 6, 2013 (Tr. at 391). On this date, Claimant was continuing to have tremors in his hands, head, and neck. (*Id.*) Claimant stated that since he went back on the beta-blocker, his symptoms had improved but nonetheless he was still experiencing them (Tr. at 392). Claimant's final visit was on May 7, 2013 (Tr. at 388). Between the two visits, Claimant noted that his symptoms had worsened and reported that he was waking up with tremors in his head and hands. (*Id.*)

On January 31, 2014, Claimant presented to Gregory Chaney, M.D., to undergo a physical RFC assessment for his tremors, osteoarthrosis, neck pain, thyroid cyst, high cholesterol, fatigue, anxiety, depression, GERD, loss of concentration, and trouble organizing thoughts. (Tr. at 408). After examination, Dr. Chaney opined that Claimant's lifting/carrying, standing/walking, and sitting are all affected by his impairments. (*Id.*) Specifically, Dr. Chaney found that Claimant could occasionally lift/carry twenty pounds, could frequently lift/carry ten pounds, could stand and/or walk less than two hours, could sit less than two hours in an eight hour day, could alternate sitting/standing every thirty-sixty minutes, and was limited in pushing and pulling in his upper body. (*Id.*) Additionally, Dr. Chaney opined that Claimant may never climb ramps, stairs, ladders, ropes, or scaffolds; he may occasionally stoop, kneel, and crouch; and he may never crawl. (*Id.*)

Dr. Chaney found that Claimant was limited in reaching in all directions as well as handling, and fingering objects. (*Id.*) With regards to environmental activities and/or conditions, it was Dr. Chaney's opinion that Claimant should never be exposed to extreme cold, extreme heat, vibration, and hazards while he should moderately avoid wetness, humidity, and noise. (*Id.*) Dr. Chaney ultimately opined that Claimant was disabled since August 2011. (*Id.*)

<u>The ALJ's Determination that Claimant's Severe Impairments
Do Not Meet or Equal Any Listings</u>

The ALJ held the following:

> **The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments on 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).**
>
> Review of the record does not reflect the degree of motor or neurological deficits as required by any listing found under Section 1.00 dealing with the musculoskeletal systems nor does the evidence show that Mr. Thompson is unable to effectively ambulate or perform fine and gross movements effectively as defined by Listings 1.02A/B. Moreover, there is no evidence of documented nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis to the degree as required by Listing 1.04.
>
> The record also fails to show evidence of spinal cord or nerve root lesions, due to any cause with disorganization of motor function as described in 11.04B—Significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C) as required by neurological systems listing 11.08.
>
> The record also fails to show that Mr. Thompson has required reconstructive surgery on surgical arthrodesis of a weight bearing joint with inability to ambulate effectively, as defined in 1.00B2b, as required by listing 1.03; amputation due to any cause as described under listing 1.05; fracture of an upper extremity as described under listing 1.07; or soft tissue injury as described under listing 1.08.
>
> The record also fails to show evidence of inflammatory arthritis as described under the immune systems disorders listing 14.09—as described in 14.00D. With: (A) Persistent inflammation or persistent deformity of: (1) One or more major peripheral weight-bearing joints resulting in the inability to ambulate effectively (as defined as 14.00C6); or (2) One or more major peripheral joints in each upper extremity resulting in the inability to perform fine and gross movements effectively (as defined in 14.00C7) OR (B) Inflammation or deformity in one or more major peripheral joints with: (1) Involvement of two or more organs/body systems with one of the organs/body systems involved at least to a moderate level of severity; and (2) At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss). OR (C)

Ankylosing spondylitis or other spondyloarthropathies, with: (1) Ankylosis (fixation) of the dorsolumbar or cervical spine as shown by appropriate medically acceptable imaging and measured on physical examination at 45° or more of flexion from the vertical position (zero degrees); or (2) Ankylosis (fixation) of the dorsolumbar or cervical spine as shown by appropriate medically acceptable imaging and measured on physical examination at 30° or more of flexion (but less than 45°) measured from the vertical position (zero degrees), and involvement of two or more organs/body systems with one of the organs/body systems involved to at least a moderate level of severity OR (D) Repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level: (1) Limitation of activities of daily living; (2) Limitation in maintaining social functioning; or (3) Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

As required by the relevant digestive systems listings found under Section 5.00 of the regulations, the evidence does not establish that the claimant's gastroesophageal reflux disease has resulted in marked impairment with regard to interference of nutrition, multiple recurrent inflammatory lesions, or complications of disease such a fistula, abcesses (sic), or recurrent obstruction unresponsive to treatment or complications persisting on repeat examination despite therapy. Specifically, the record shows no evidence of recurrent upper gastrointestinal hemorrhage from an undetermined cause as required by the digestive systems listing 5.02; stricture, stenosis, or obstruction of the esophagus (demonstrated by endoscopy or other appropriate medically acceptable imaging) with weight loss as described under listing 5.08 as required by digestive systems listing 5.03; or peptic ulcer disease (demonstrate by endoscopy or other appropriate medically acceptable imaging) as described under digestive systems listing 5.04. There is also no evidence of chronic liver disease as described under Section 5.05; chronic ulcerative or granulomatous colitis (demonstrated by endoscopy, barium enema, biopsy, or operative findings) as described under digestive systems listing 5.06; regional enteritis (demonstrated by operative findings, barium studies, biopsy, or endoscopy) as described under digestive systems listing 5.07; or weight loss due to any persisting gastrointestinal disorder as described under digestive systems listing 5.08.

In evaluating the claimant's history of tremors under the neurological systems listings at Section 11.00, the evidence fails to

show evidence of neurological impairment associated with any listing under this Section. Specifically, there is no evidence of epilepsy as described under Listings 11.02 or 11.03; evidence of any central nervous system vascular accident as described under Listing 11.04; evidence of any brain tumor(s) as described under Listing 11.05; evidence of Parkinsonian Syndrome as described under Listing 11.06; evidence of Cerebral Palsy as described under Listing 11.07; evidence of spinal cord or nerve root lesions, due to any cause as described under Listing 11.08; evidence of Multiple Sclerosis as described under Listing 11.09; evidence of Amyotrophic Lateral Scerlosis as described under Listing 11.10; evidence of Anterior Poliomyelitis as described under Listing 11.11; evidence of Myasthenia Gravis as described under Listing 11.12; evidence of Muscular Dystropy as described under Listing 11.13; peripheral neuropathies as described under Listing 11.14; evidence of subacute combined cord degeneration (pernicious anemia) with disorganization of motor function as described in 11.04B or 11.15B not significantly improved by prescribed treatment; evidence of degenerative disease not listed elsewhere such as Huntington's Chorea, Friedrich's ataxia, and spino-cerebellar degeneration as described under Listing 11.17; evidence of cerebral trauma as described under Listing 11.18; or evidence of syringomyelia as described under Listing 11.19.

The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of relevant mental disorders listings 12.04 and 12.06. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in 'marked' impairment in at least two OR 'extreme' limitation in at least one of the following: activities of daily living; maintaining social functioning; and/or maintaining concentration, persistence, or pace; OR three or more repeated episodes of decompensation, each of extended duration. A 'marked' limitation means more than 'moderate' but less than 'extreme.' Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks (Tr. at 15-17).

## Discussion

The ALJ found at step two of the sequential evaluation that Claimant suffers from the following severe impairments: osteoarthrosis and allied disorders; gastritis and duodenitis;

12

essential tremors; and affective mood and anxiety related disorders to include Major Depressive Disorder (with anxious features) (Tr. at 13). Subsequently, at the third step of the sequential evaluation, the ALJ must determine whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. 20 C.F.R. § 404.1520(d). The ALJ's determination of whether Listings were met or equaled is fleeting and confusing. The ALJ provides minimal basis for his conclusions that Listings were not met.

The Fourth Circuit has held that an ALJ providing no basis for his conclusion that a listing was not met failed to apply the requirements of the listing to the medical record. *Radford v. Astrue*, 2012 WL 3594642, at *1 (E.D. N.C. Aug. 20, 2012). The ALJ denied Radford's claim finding that although he had two severe impairments – lumbar degenerative disc disease and chronic obstructive pulmonary disorder – neither qualified as an impairment under Listings 1.04A (disorders of the spine) or 3.02 (chronic pulmonary insufficiency), and neither constituted any other type of impairment listed under sections 1.00 (musculoskeletal), 3.00 (respiratory system), 11.00 (neurological), and 13.00 (malignant neoplastic diseases). The Fourth Circuit found that "The ALJ provided no basis for his conclusion, except to say that he had 'considered, in particular,' the listings above, and had noted that state medical examiners had also 'concluded after reviewing the evidence that no listing [was] met or equaled.'" See *Radford v. Colvin,* 734 F.3d 288, 295 (4th Cir. 2013) ("A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling." (citation omitted)) *see also Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (concluding that an ALJ is required to build an "accurate and logical bridge" between the evidence and his conclusions (citation omitted)).

To meet or equal Listing 1.04A, the claimant has the burden of producing evidence that his nerve root compression is characterized by sufficiently proximate (and perhaps simultaneous) medical findings of (1) neuro-anatomic distribution of pain, (2) limitation of motion of the spine,

(3) motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss, and (4) positive straight-leg raising test. The ALJ's finding in *Radford* that the impairments did not meet the Listing is insufficient for failing to specifically apply the Listing requirements to the evidence in the record.

In the present matter, one example of the Listings the ALJ stated Claimant had not established is as follows:

> Review of the record does not reflect the degree of motor or neurological deficits as required by any listing found under Section 1.00 dealing with the musculoskeltal systems nor does the evidence show that Mr. Thompson is unable to effectively ambulate or perform fine and gross movements effectively as defined by Listings 1.02A/B. Moreover, there is no evidence of documented nerve root compression, spinal arachnoiditis or lumbar spinal stenosis to the degree as required by Listing 1.04 (Tr. at 15-16).

The ALJ's broad sweeping finding that Claimant did not demonstrate a requirement to satisfy any of the listings found under Section 1.00 is not supported by substantial evidence. Section 1.00 pertaining to the musculoskeletal system contains the following Listings: Major dysfunction of a joint(s); Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint; Amputation; Fracture of the femur, tibia, pelvis, or one or more of the tarsal bones; Fracture of an upper extremity; and, Soft tissue injury (e.g., burns). The ALJ failed to apply the requirements any of the listings to the medical record. Such a generalization lacks reasoning and an explanation.

A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. *See Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984). The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. *Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989). If the reviewing court has no way of evaluating the basis for the ALJ's

14

decision, then "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Florida Power & Lights Co. v. Lorion*, 470 U.S. 729, 744, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985).

Like *Radford*, the ALJ in the present matter summarily concluded that Claimant's impairments did not meet or equal a listed impairment, but failed to provide an explanation other than saying the Listing requirement was not met. This insufficient legal analysis makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986) (reversing and remanding when ALJ "failed to compare [the claimant's] symptoms to the requirements of any of the four listed impairments, except in a very summary way").

Although the ALJ cites medical opinions, summarizes these opinions and Claimant's testimony, he does not specify which opinions he applied to each Listing. The ALJ must accompany his decision with sufficient explanation to allow a reviewing court to determine whether the Commissioner's decision is supported by substantial evidence. The Commissioner is required to include in the text of [his] decision a statement of the reasons for that decision. *Cook*, 783 F.2d at 1172. The ALJ's "decisions should refer specifically to the evidence informing the ALJ's conclusion. This duty of explanation is always an important aspect of the administrative charge. . . ." *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985).

## Conclusion

For the reasons set forth above, the undersigned respectfully recommends the District Judge find that the ALJ's failure to adequately explain his reasoning precludes this Court from undertaking a meaningful review of the findings that Claimant did not satisfy any Listing for his severe impairments. The undersigned respectfully proposes that the District Judge find that the

ALJ's determination that Claimant's severe impairments did not satisfy any Listing is not supported by substantial evidence. This Court makes no recommendation as to Claimant's remaining arguments. These issues may be addressed on remand. The undersigned respectfully recommends that the presiding District Judge remand this matter for further analysis and consideration.

It is hereby respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the Plaintiff's Brief in Support of Motion for Judgment on the Pleadings (ECF No. 8) to the extent Plaintiff seeks remand, **DENY** the Brief in Support of Defendant's Decision (ECF No. 11), **REVERSE** the final decision of the Commissioner, and **REMAND** this case for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g) and **DISMISS** this matter from this Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Chief District Judge Robert C. Chambers. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d

91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Chambers and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Enter: August 31, 2016

_____
Dwane L. Tinsley
United States Magistrate Judge